IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION


FELICISA COLETTE WILLIS-COLLINS                                        PLAINTIFF


VS.                          CASE NO. 5:17CV00156 PSH


NANCY A. BERRYHILL, Acting Commissioner,
     Social Security Administration                                    DEFENDANT



ORDER

Plaintiff Felicisa Colette Willis-Collins ("Willis-Collins"), in her appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Berryhill") to deny her claim for Disability Insurance benefits (DIB), contends the Administrative Law Judge ("ALJ") erred in relying exclusively upon the Medical-Vocational Guidelines (the "Grids") to find her disabled, and the ALJ failed to properly consider her subjective complaints. The parties have ably summarized the medical records and the testimony given at the administrative hearing conducted on December 21, 2015. (Tr. 133-181). The Court has carefully reviewed the record to determine whether there is substantial evidence in the administrative record to support Berryhill's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from January 17, 2014, the date of alleged onset, through February 17, 2016, when the ALJ ruled against Willis-Collins.

*The Administrative Hearing:*

Willis-Collins, who was 43 years old at the time of the administrative hearing, earned a GED and worked as a manager at a Dillard's department store until January 2014. She was married, with

1

two children, ages 11 and 15, living at home. She testified to receiving treatment for depression from her primary care physician, but seeing no mental health care experts. According to Willis-Collins, her disabling problems include peripheral neuropathy, heart problems stemming from stents which were inserted in 2010 or 2011, and chronic anemia. She testified to daily taking her kids to school until August of 2014, when an older daughter moved back home. As a result, Willis-Collins only occasionally takes the children to school. She described pain and burning and swelling in her feet when exercising, and stated if she works out on one day she could not work out again during the rest of the week. She said she last visited the gym to exercise about five months before the hearing, and prior to that she had tried to go to the gym 2-3 times a week. Due to her anemia, she stated she received 4-5 iron transfusions, with the sessions lasting 4-5 hours each. Willis-Collins also said she experienced fatigue and nausea for a few days after each transfusion. According to Willis-Collins, her neuropathy resulted in difficulty getting out of bed during the night, and on occasion she was unable to make it to the bathroom in time. She described a lack of feeling in her toes, extending up her legs, with the right leg being worse than the left. Willis-Collins estimated she could sit 15-20 minutes before needing to prop her legs, and could stand for 30 minutes before needing to rest. On her bad days, Willis-Collins said, she did not get out of bed. On a good day, she could take a bath without assistance. She stated she had not had a good day in the month prior to the hearing.

Willis-Collins described additional problems, and recited the medications she was taking. She said she had been diagnosed with bleeding in her colon, stomach ulcers, constipation, fibromyalgia, borderline diabetes, and that she experienced tightness in her chest, shortness of breath, nausea and vomiting on occasion, swallowing problems, and sleep issues. She mentioned

Savella, Meloxicam, and Gabapentin as medications she took. (Tr. 133-181).

David Elmore ("Elmore"), a vocational expert, stated Willis-Collins' past work as a department store manager was medium, skilled work, and that a previous job as a food service worker at a nursing home was medium, unskilled work. (Tr. 177-179). The ALJ did not pose any hypothetical questions to Elmore.

*ALJ's Decision:*

In his February 17, 2016, decision, the ALJ determined Willis-Collins had not engaged in substantial gainful activity since the onset date of January 17, 2014. Severe impairments found by the ALJ were: coronary artery disease/cardiovascular diseases (status-post stent placement); residual intermittent angina and shortness of breath; hypertension/ benign orthostatic hypotension; anemia with sickle cell trait; peripheral neuropathy; polyarthralgia; fibromyalgia; bilateral neuroma(s) of the feet with bunion; and hammertoe deformity of the left foot (surgically corrected). In finding these impairments to be severe, the ALJ noted that they had "more than a minimal impact on claimant's ability to perform basic work activities." (Tr. 22). The ALJ further determined Willis-Collins had the residual functional capacity ("RFC") to perform the full range of light work. The ALJ, citing the appropriate factors, assessed Willis-Collins' credibility, finding the "evidence as a whole fails to support" her reports and allegations "regarding the chronically severe and debilitating nature" of her conditions. (Tr. 32). In reaching this conclusion, the ALJ considered the testimony at the administrative hearing, the responses submitted by Willis-Collins to a Pain Questionnaire and a Function Report-Adult, as well as the medical history and records relating to her peripheral neuropathy, back and musculoskeletal pain, coronary artery disease, anemia, and anatomical abnormalities of the feet. Great emphasis was placed upon treatment notes from Dr. Tim Wilkin

3

("Wilkin"), a treating physician, recording that Willis-Collins had maintained a good low calorie diet and a "vigorous exercise program" while under Wilkin's care. (Tr. 29). On three occasions (March 1 and September 24, 2013, and January 6, 2014), Wilkin recorded comments about Willis-Collins maintaining the low calorie diet and vigorous exercise program. (Tr. 505, 509, 519). Further, the ALJ cited Dr. Scott Gray's ("Gray") August 17, 2015, treating note quoting Willis-Collins as stating her foot pain is most noticeable when she is working out and exercising in her tennis shoes. (Tr. 727). The ALJ also noted the absence of any functional restrictions, either temporary or permanent, imposed by any physician or healthcare provider. By utilizing the Grids to find Willis-Collins was not disabled, the ALJ found she could perform all or substantially all of the exertional demands of light work. (Tr. 20-34).

**Error in relying exclusively upon the Grids, and error in assessing credibility:**

As explained below, these claims are intertwined, and will be considered together. Our first inquiry is into the ALJ's credibility assessment. We begin here because the ALJ's RFC determination was largely premised upon his credibility assessment.

The ALJ cited and discussed the pertinent factors to support a valid credibility determination. Willis-Collins claims the ALJ erred in describing her exercise and in her use of prescription medication. We find substantial evidence supports the credibility determination.

At the administrative hearing, Willis-Collins testified[1] she last went to the gym in July 2015, and she was unable to exercise for the rest of the week if she exercised one day. While she criticizes the ALJ's citation of Wilkin and Gray and their references to her exercise, Wilkin's notes suggest

---

[1] In a Function Report – Audit which Willis-Collins filled out in February 2014, she describes difficulty with walking, standing, kneeling, and other functions, but also describes her work day to include an ability to "walk the store" twice daily and to set up displays. (Tr. 337-344).

4

she was involved in vigorous exercise at the outset of the relevant period, and Gray's note suggests she was exercising in or around August 2015. The ALJ validly considered this testimony and the medical treatment notes, and it was in his purview to note the inconsistencies and to weigh the evidence as he did.

Willis-Collins also faults the ALJ in the following way:

Next, the ALJ held that:

> there is no evidence to show that [Ms. Collins] has ever requested or required prescription pain medications, with no indication that a medical need for such medications has ever been established.

However, Ms. Collins actually testified that her physician prescribed "more gabapentin." This is supported by the pharmacy printout dated January 15, 2016, documenting Gabapentin, as well as, Oxycodone beginning December 19, 2015.

Plaintiff's brief at pages 9-10. There is no merit to this argument. A review of the record is helpful. Willis-Collins testified at the December 21, 2015, hearing that she was not taking prescription pain medication and did not want to take them, having seen two brothers who struggled with pain medications. (Tr. 170-171). The ALJ accurately noted Willis-Collins' testimony to this effect in his decision.[2] Pharmacy records show that a prescription pain medication,[3] Oxycodone, was prescribed two days before the hearing. (Tr. 761-762). However, Willis-Collins neglected to mention this in her testimony, and the ALJ's reliance on her testimony is not erroneous. It is

---

[2] "Despite alleged constant, disabling pain, she said she was not taking, and did not want to take prescription pain medication(s)." (Tr. 25).

[3] Although Willis-Collins includes a reference to Gabapentin in her argument, the ALJ was specific in referring to *prescription pain* medication, and Gabapentin was, according to Willis-Collins, prescribed for her fibromyalgia and neuropathy, not for pain. (Tr. 166).

possible that her testimony was actually consistent with the records, as the prescribing of Oxycodone on December 19, 2015, does not necessarily mean that Willis-Collins actually took the medication.

In summary, the ALJ thoroughly discussed the medical records and all of the relevant factors considered in reaching his credibility conclusion. This detailed analysis is supported by substantial evidence. The valid credibility assessment was the foundation for the ALJ's RFC finding that Willis-Collins could perform the full range of light work, and this RFC finding is pivotal in addressing Willis-Collins' remaining claim.

Willis-Collins contends the ALJ erred in failing to obtain the expert testimony of a vocational expert because she suffers from nonexertional impairments. The *existence* of nonexertional impairments is not the issue. Here, the ALJ determined, at Step 2, that Willis-Collins suffers from nonexertional impairments, including peripheral neuropathy. Rather than the existence of these impairments, it is the *degree* to which these nonexertional impairments affect Willis-Collins which must be examined. "[T]he ALJ may exclusively rely on the [Grids] even though there are nonexertional impairments if the ALJ finds, and the record supports the finding, that the nonexertional impairments do not *significantly* diminish the claimant's [residual functional capacity] to perform the full range of activities listed in the [Grids]." *Reed v. Sullivan*, 988 F.2d 812, 816 (8th Cir. 1993) [emphasis in original]; *see also Ellis v. Barnhart*, 392 F.3d 988, 993 (use of Grids was appropriate despite a finding of a severe nonexertional impairment (fibromyalgia)).

Our inquiry, then, is whether the record supports the ALJ's finding that the nonexertional impairments did not significantly diminish Willis-Collins' ability to perform the full range of light work. Having found substantial evidence to support the credibility determination, we find that the RFC determination is also supported by substantial evidence. The absence of any medical opinion

of limitations, temporary or permanent, is consistent with this conclusion. It follows that the ALJ correctly utilized the Grids to render his decision that Willis-Collins was not disabled.

In summary, we find the ultimate decision of Berryhill was supported by substantial evidence. We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Berryhill is affirmed and Willis-Collins' complaint is dismissed with prejudice.

IT IS SO ORDERED this 8th day of February, 2018.

_____
UNITED STATES MAGISTRATE JUDGE